[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 STATEMENT OF THE CASE
This is a dispute involving the terms of an escrow agreement and the rights of the parties to the escrow funds. The escrow agreement was entered into on August 11, 1987 as an addendum to a sales contract under the terms of which the plaintiff agreed to convey to the defendant Skibitcky, a condominium unit located at Bayview Place in West Haven, Connecticut. The addendum as executed reads as follows:
 ADDENDUM to contract dated 8/11/87 Galvanek to Skibitcky
It is further agreed and understood by the parties hereto, that the seller shall place in escrow the sum of $7,500 to be listed for proposed future assessment to repair or improve the embankment.
Said escrow shall be held by seller's attorney in an interest bearing account, interest going to the seller, who will then pay the assessment when billed up to, but not exceeding $7,500.
Both parties testified that when the agreement was executed. They anticipated that the condominium association would follow through on its plan to repair the seawall in front of the building and engage the contractor who had submitted a bid to do the work for $60,000. Each of the eight unit owners would be assessed the sum of $7,500 and the escrow funds would be utilized to pay the assessment for unit 6, the subject of the sales CT Page 6494 agreement and addendum.
There is disagreement as to whether an assessment was ever actually levied, but there is no question that the contract was never executed and the work was never done. Then, on October 23, 1994, at the annual meeting of the condominium association, the subject of this repair work came up and the minutes of that meeting reflect the following action taken:
"EMBANKMENT:
Bestmann Green Systems proposal having been rejected and the loan from S.B.A. having been returned, the question was raised about absolving the unit owners from the 1986 self imposed assessment of $7,500 per unit in relation to the embankment. After much discussion on embankment stability, escrow agreements, sale of condominiums, the following motion was made.
Motion by Unit 7, 2nd by Unit 1, that the unit owners be absolved of the $7,500 assessment for each unit made in 1986 for an embankment wall.
Motion passed 5 to 2, 1 abstention. For motion, Units 1, 3, 4, 7, 8. Opposed, Unit 5 and 6. Abstention, Unit 2."
Mr. Skibitcky was present and voted in opposition to the motion.
The plaintiff now asks the court to order the funds released to him since the purpose of the escrow agreement no longer exists and there is no present plan to do the repair work.
Mr. Skibitcky argues that since there is no time limit to the agreement, the funds should remain in escrow or given to him until such time as the project is resurrected.
Atty Kevin Smith is a defendant in this action because he is the holder of the escrowed funds. He has attempted to create an interpleader action and seeks a court order directing him to dispose of the funds as the court determines they should be.
 I
The defendant argues that the escrow agreement should not be treated as a separate contract from the sales contract. No one seems to be suggesting such a proposition and the court shall treat it as one contract. CT Page 6495
The defendant then goes on to argue that when the entire contract, i.e., the sales contract including the escrow clause, is read it must be construed as reflecting an intent by the seller not to reduce the purchase price of $149,500 — injecting the issue of "fair market value" into an argument that ignores the plain intent and meaning of the parties.
The seller agreed to reimburse the buyer for up to $7,500 for the "proposed future assessment to repair or improve the embankment." He collected the sales price of $149,500, but was conceding that the buyer should not assume the expense of this repair.
By "this repair," the court refers to the proposed expenditure of $60,000 of which the buyer-defendant would be charged by assessment $7,500.
It is significant that in their testimony, both the plaintiff and the defendant stated the purpose of the escrow clause was the particular bid of $60,000 and the proposed assessment. It was not addressed to other contingencies. In fact, the absence of other contingencies and dates supports the conclusion that this was the intent of the parties. Thus, whether the terms of the escrow agreement are part of the negotiated price as the defendant urges is immaterial.
As for the argument that the defendant will be left to shoulder the future cost of repairs, if any, he has had since August of 1987 to take appropriate steps on his behalf.
 II
The defendant also argues that the fair and equitable interpretation of the escrow agreement would award the funds to the defendant so that he can invest it as a hedge against the cost of future repairs.
This would require the court to effect a major reformation of the agreement, in the face of evidence which clearly enunciates the original purpose of the agreement.
 Conclusion
In view of the passage of eleven years since the execution of the agreement and the expressed intent of the parties, all as noted above, the court finds it should terminate this escrow agreement and order the interpleading party to disburse the funds to the plaintiff. CT Page 6496
The plaintiff's citation of FDIC vs. Napert Boya Part.,40 Conn. App. 434, 440-41 (1996) is pertinent to this issue:
" . . . (Under Restatement [second] of Contracts § 204, when parties have not agreed with respect to an essential contract term, the court may supply one which is reasonable under the circumstances.)"
The supplied term is the termination date which is found to be consistent with the intent of the escrow agreement. It is again emphasized that the agreement addressed the specific bid, proposal and assessment. It could be interpreted to contemplate a substitute process to do the same work within a reasonable time. It cannot be extended eleven years with no prospects for the work ever being done.
Anthony V. DeMayo